### Case No. 17,747.

### WILLIAMSBURG FERRY CO. v. The CHELSEA.

[29 Hunt, Mer. Mag. 74.]

District Court, D. Connecticut. 1853.

COLLISION—VESSEL AT DOCK—TUG AND TOW.

[A ferryboat was lying at a bulkhead on the Williamsburg side of the East river, protected by the long south pier, and undergoing repairs. On the outside of her lay a float upon which workmen were standing. The steamer C., in an eddy outside of the current near the navy yard, took in tow a schooner lashed to her starboard side, and started down the river against a strong flood tide. When she struck the tide, not being under strong headway, the current turned her head up the river; and, to bring her back to her course, her wheel and that of the schooner were put hard a starboard. But the tide was too strong, and was rapidly carrying them upon the pier above the ferryboat, to prevent which the C. ported her helm to wear round and pass the pier on her port side; but, in attempting this maneuver, the two vessels were carried directly upon the ferryboat, causing the damage complained of. Held, that the C. was in fault for starting out with her tow in the condition of the tide, and also for want of prudent and skillful navigation thereafter.]

[This was a libel in admiralty by the Williamsburg Ferry Company against the steamboat Chelsea to recover damages resulting from a collision.]

JUDSON, District Judge. The libellants are an incorporated company, under an act of the general assembly of the state of New York, and their steam ferryboats ply between Williamsburgh and Peckslip, New York; they were the owners of the steam ferryboat Oneota, which, on the 20th June, 1851, was made fast to the bulkhead, on the Williamsburgh side of the East river, at or near the foot of South Eighth street, in the village of Williamsburgh, undergoing neces- sary and needful repairs; that directly above the Oneota she was protected by the long South pier which guards the Jackson street ferryboats as they enter their dock on the Williamsburgh side of the river; on the outer side of the Oneota lay a float or stage, made fast to the Oneota, upon which the men were standing while the repairs were being made; the pier immediately above the Oneota extends more than one hundred feet into the East river, at right angles with the bulkhead or wharf to which the Oneota was made fast; and, at the time of the collision, a plank ran from the pier to the stern of the Oneota, upon which the workmen passed and repassed while the repairs were going on. There was no controversy about the facts thus far. The answer of the respondents admits that they are the owners of the steamboat Chelsea, and, by way of defense, the answer alleges that, at the time of the supposed collision, the tide was running strong flood, and, from the formation of the docks, vessels bound up the East river would set in to where the Oneota lay. They alleged further, and made it a prominent part of the defense, that the Oneota was in an improper place, and that she had and detained alongside a stage or float, which could and should have been removed. It appears in evidence that, at twelve o'clock at noon, the steamboat Chelsea was at or near the navy yard, and in an eddy outside of the current of the river, where she took in tow the schooner Louisa of two hundred tons bur- then, and making fast this tow upon the star- board side of the Chelsea, put on steam for pier No. 9, down East river at flood tide running up East river, that when the Chel- sea with her tow struck the tide, she was heading on her proper course down East river, but not being on strong headway, the

tide struck her, turning her head up East river, out of her proper course; and to bring her back, the wheels of the Chelsea and the Louisa were put hard a-starboard. The flood tide proved too strong, and was rapidly carrying the Chelsea and the Louisa upon the long pier above the Oneota; and to prevent this, and to save the Chelsea and Louisa from this disaster, the Chelsea ported her wheel to wear round, and pass the pier upon her larboard side. But the scanty room and the strong tide, operating together, the Chelsea with her tow, were taken directly upon the Oneota, and her float produced the damage set forth in the libel. Substantially these are the facts, and the case is to be decided by the law arising on these facts. It is a controversy regarding the law, rather than a controversy as to the facts of the case. Then, according to the rules of law, where is the fault? The only fact about which there can be said to be any serious dispute, is as to the position of the Oneota at the time of the collision. The answer alleges, as has already been stated, that her position was an improper one; but the weight of the evidence establishes beyond doubt that she was in a proper place, a usual place for steamboats to be made fast for repairs and for other purposes, and the court so finds the fact. The Oneota then was not in fault. The damage was incurred by the Chelsea, but whether she is responsible depends on another inquiry. Was the collision the result of inevitable accident, or the force of the tide, without any want of skill or mismanagement on the part of the master of the Chelsea? If so, then there can be no claim for damage in this case. This is the principal inquiry, and, in order to dispose of this question satisfactorily, it will be necessary to recur to the position of the Chelsea before she weighed her anchor, to the state of the tide and current, the knowledge of their power upon a vessel at its full strength, and then the manœuvring of the Chelsea up to the time of the collision.

The Chelsea was at anchor in the Wallabout Bay, with the schooner Louisa made fast upon her starboard side. She was destined with her tow down East river to pier No. 9. The master of the Chelsea was an experienced pilot, accustomed to pilotage on the East river, and must be presumed to know the course and power of the tides and currents in the immediate vicinity of his steamboat. And the court is not left in doubt as to this knowledge, because, in the answer, it is alleged, and sustained by the oath of the party, "that at the time the tide was running strong flood, and from the formation of the docks there, setting vessels bound up the river into where the Oneota lay." On this point the evidence stands uncontradicted; that the Chelsea left her moorings at about twelve o'clock at noon, at flood tide, with her heavy tow on her starboard side, and pushed into this strong flood tide

running up the East river; and heading the Chelsea down the river, this strong flood tide struck her bows, and sheered her up the river in spite of her steam, and her helm hove hard to starboard. From the knowledge which every skillful pilot should possess of these influences, it must be deemed imprudent and unskillful in the master of the Chelsea to have left her moorings at that time, and in that state of the tide, particularly with so little headway on his boat. His boat thereupon became unmanageable. Sound judgment should have dictated a much safer course in waiting for a change of the tide, or of adopting the other alternative of getting up more steam and headway before throwing his boat into this strong flood tide. Then it is quite evident that the Louisa should have been taken in tow on the larboard side of the Chelsea, where the tide would have had much less power upon her, driving both out of their course. The next error committed by the Chelsea was in attempting to wear around by putting his wheel aport, after coming into the strong flood tide, setting his boat up the river. A much more safe and judicious movement should have been ordered by the master of the Chelsea, and that was, to have steered his boat up the river until she could have reached an easy point in the river, where he might have wore the ship to the larboard. Had this been adopted, the master would have sufficient headway on his boat to have regained his intended course in the direction of pier No. 9. But this was not done, and the master of the Chelsea ported his wheel to wear round to regain his intended course down the river. He assigns as a reason for this manœuvre, that he might have run foul of the end of the long pier, and injured, and perhaps sunk, his own boat. This was an insufficient reason; first, because by any proper skill, the Chelsea might have been carried up the river past the pier; and if his wheel had been kept hard a-starboard she would have gone clear, with very little loss of time; and second, the reason was insufficient, because no man has a right to destroy his neighbor's property in saving his own.

It is not only illegal, but immoral, to avoid an impending disaster, and throw it upon another. Suppose the Chelsea had, in that critical moment, yielded to this law of morality, and permitted herself to run foul of the pier, when, according to the convictions of her master, this was inevitable, what would have been the consequences? The Oneota would have been saved, and the Chelsea would have received the damage. It is believed that such a result might have been quite as consistent as to have shifted the misfortune from the wrongdoer to an innocent party. To save the Chelsea from this disaster, she is rounded to, by order of the master, for that avowed object, when the consequences of a collision with the Oneota were

even to him certain. It would have been more magnanimous, and I think much more just, for the Chelsea to have taken the risk of running foul of the pier herself; but even that might have been avoided if the master, instead of rounding to, had kept up the river, and saved both. But there is still another error, too manifest to be passed over. The moment the Chelsea found herself unmanageable, with these difficulties in her way, she should have let go her anchor, and that of the schooner also, and remained until the tide should favor her escape from hazard to herself and danger to others. This was neither done nor attempted. But it is said on the defense, that these were only errors in judgment, and that by the laws of the sea, a master is not required absolutely to adopt such course as to avoid the danger, but will be justified in doing that which at the time he honestly believes will be best; and to sustain this position, the case of Crocket v. The Isaac Newton [18 How. (59 U. S.) 581] has been cited. The steamboat Isaac Newton in that case was justified, because the master of the schooner pushed her out into the tide without any wind to fill her sails, so that being entirely helpless, through the unskillful and imprudent conduct of the master of the schooner, the collision took place. That case, in principle, is like the present, and so far from aiding the defense, sustains most fully the libel in this case. As in that, there was want of prudence and skill in the master when she left a place of safety at such a time of tide, and no wind to give his vessel steerage way, so in this there was want of prudence and skill in going into the tide at such a time. This was the first great error of the Chelsea, and as this was followed up by the subsequent errors, which, in my judgment, were palpable errors, she must be deemed in fault, and the decree must be for libelants with an order of reference.